CITY OF CHICAGO

v.

HARRIETT W. REED ET AL.

*Riparian Rights—Wharf—Erection of Building—Bill to Enjoin—Municipal Corporations.*

1. A municipal corporation can not maintain a bill to enjoin the erection of a building or buildings on premises occupied by a wharf which is alleged to extend into a navigable stream, on the ground that the complainant may, at some future time, condemn the premises or part thereof for the construction of a bridge.

2. In the case presented, as the bill does not attack nor seek to disturb the actual occupation of the premises for purposes of a wharf, it must be presumed that such occupation is proper.

[Opinion filed December 7, 1888.]

APPEAL from the Superior Court of Cook County; the Hon. GWYNN GARNETT, Judge, presiding.

Messrs. HAYNES & EASLEY and JOHN W. GREEN, for appellant.

In this suit the object is to restrain the use of the property for any other purpose than a wharf. Under the view we take the appellees may have the right to maintain the wharf, but not the right to destroy the wharf by the erection of a permanent building thereon.

The evidence shows that the wharf projects into the navigable river, is a substantial obstruction to navigation, and that any contemplated improvement to be made in the river at State street, involves the idea that the navigable waters adjacent to the defendant's property shall be preserved. The property in controversy being a wharf and the defendants having no other right therein than a mere wharfage right, they can not place any obstruction upon the wharf, or divert it to any other use. People v. Macy, 62 How. Pr. 65; Degan v. Dunlap, 15 Phila. 69; Bingham v. Doane, 9 Ohio, 165.

When rights have once become vested in the public in a river, in fact navigable, they can not be divested except by

City of Chicago v. Reed.

appropriate legislation.    Angell on Water Courses, Sec. 254; Gould on Waters, Sec. 139; People v. City of St. Louis, 5 Gilm. 375; Logan Co. v. City of Lincoln, 81 Ill. 158.

The city has the right to maintain this action, because the State has delegated the power to it, by the acts pleaded in the bill and amendments thereto, so to do.    McCartney v. C. & E. Ry. Co., 112 Ill. 613; People v. Macy, 62 How. Pr. 65. Even if this position could be successfully refuted the proof made in the record of the incalculable injury that the erection of a permanent building upon this wharf would inflict upon the city in hampering it in its improvements of State Street, and the contemplated bridge there, is a sufficient special injury to entitle it to restrain the defendants from improperly diverting the premises in controversy from use as a wharf.    It has a special interest in the premises as public property, to prevent the defendants from misappropriating the wharf, and put it to the expense of condemning structures that the defendants have no right to erect upon the wharf.

Messrs. Smith & Pence and Edwin F. Bayley, for appellees.

The owner of lots bordering upon a river owns the bed of the river to its center, subject to the public easement of navigation.    The riparian owner has the right to erect wharves and docks to the line of navigable water, or even beyond, if he does not thereby impair the public right of navigation. Middleton v. Pritchard, 11 Ill. 554; City v. Laflin, 49 Ill. 172; C. & P. R. R. Co. v. Stein, 75 Ill. 41; McCartney v. C. & E. R. R. Co., 112 Ill. 611; Yates v. Milwaukee, 8 Wall. 497 (cited with approval in C., R. I. & P. R. R. Co. v. City of Joliet, 79 Ill. 44); Browne v. Chadbourne, 31 Me. 9; Lorman v. Benson, 8 Mich. 18; Gough v. Bell, 23 N. J. L. 441; Jones v. Soulard, 24 How. 44.

Artificial accretions belong to the owner of the bank.    Wetmore v. Atlantic Company, 37 Barb. 70.

Whether accretions are artificial or gradual, the same rule applies; they belong to the owner of the land.    Steers v. Brooklyn, 101 N. Y. 51.

Non-navigable streams stand on the same footing as other private property, so far as the right of eminent domain is concerned. Smith v. Gould, 59 Wis. 631.

The riparian owner, whether he owns to the thread of stream or not, has the right to construct in shoal water in front of his property, at his peril of obstructing navigation, far enough to reach actually navigable water. Desplaines v. Railroad Co., 42 Wis. 214; Rippe v. Railroad Co., 23 Minn. 18; Benson v. Monow, 61 Mo. 345.

GARY, J. In the year 1839 the United States platted Fort Dearborn Addition to Chicago, and divided the 231 7-10 feet, on the north side of South Water street in the city of Chicago, bounded north by the river and west by State street, into four lots, the east line of the east lot being 166 feet long and the west line of the west lot 45 feet long. The north line along the river was not straight, but made angles to the north, going from west to east, at the places where the lines between the lots come to the river, so that the north line of the four lots was a concave one on the river, not by a curve, but by a succession of straight lines on the north boundary; that of each lot trending more to the north in going east, than the line of the lot next west.

For many years before the fire of 1871, the lots were used as a wharf, but there was frequent need of dredging in front of them, caused by the approach to the State street bridge projecting, and by a sewer there emptying into the river, the effect of which was that there was a deposit of matter in the bed of the river in front of the wharf.

This dredging was done by the occupiers of the wharf. When the fire came it burned up the bridge and wharf. The city in rebuilding the bridge, extended the approach still further into the river, and the occupiers of the wharf, without authority from anybody, rebuilt the wharf some twenty feet further into the river at the west end than it had been before. At the east end the encroachment is less. The north line of the wharf is made straight from the west, very nearly to the east end of it, thus destroying the cove or bay which had existed in the river in front of the wharf.

City of Chicago v. Reed.

Vessels in passing the bridge eastward bound are compelled to turn more to the north, and a vessel lying at the wharf is more in the way of navigation than before.

In January, 1887, the city filed a bill against the appellants from which are taken the following extracts:

" Your orator further represents that it is a city of about 750,000 inhabitants, about one-fourth of whom reside upon the north side of the Chicago river, and about one-fourth upon the south side thereof, and that the greater part of the business of said city is done upon the south side; that the means for communication between the sections of this city are already far inadequate to the demands thereof; that the population of said city is growing at a rapid rate, and the demands of commerce are increasing in the same proportion; that, in order to partially meet the needs and necessities of the public, your orator now has under consideration the construction and operation of a large double track steam swing bridge at State street; that the river at that point, owing to contraction of said river hereinafter named, is too narrow for the construction and operation of such a bridge as is contemplated and required, without interfering with the navigation of said river.

" Your orator further shows that the space so filled is needed and required in the construction, operation and maintenance of a bridge at State street as aforesaid; that without said space it will become necessary, in order to afford proper means of communication as aforesaid, to impede and interfere with the navigation of said river.

" That said Allerton, as your orator is informed and believes, is about to erect upon said space so filled in, a large and permanent building, which, if so erected, will effectually deprive your orator of the use of the space aforesaid and result in the narrowing of the river at that point and thereby impede its navigation, to the great injury and detriment of your orator and of the public," and the prayer is, speaking of the appellees, that " they and each of them may be restrained by this court from in any manner incumbering or conveying said space of ground, formerly a part of the river as aforesaid, and from in any manner erecting a building or buildings, or doing anything thereon which will in any way interfere with the

right of your orator to the uses of said premises for the purposes herein stated, and your orator may have such other and further relief in the premises as the nature of the case shall require, and to your honors shall seem meet."

There is no specific prayer that the encroachment may be abated as a nuisance, nor any argument by appellant that, under the general prayer, this might be decreed, and, therefore, that question will not be considered.

This is a bill *quia timet*, which, while it does not admit the rightful, yet does not attack and seek to disturb the actual occupation of the premises as a wharf. "Things are held to be legally and properly in their existing state, until the contrary be shown." Cowen & Hill, note to 1 Ph. Ev. 603.

The same principle has often been applied in this State to the possession of real property. Doty v. Burdick, 83 Ill. 473; Herbert v. Herbert, Breese, 354.

For the purposes of this case, appellant not seeking to disturb the possession, it must, without looking at its origin, and, notwithstanding the objections of the appellant to it, be treated as what, in the lapse of time it may, if it has not now, become, namely: Full and complete ownership, invulnerable against all attacks.

If the ownership of the premises is in any of the appellees, the court can place no restraint upon them as to the buildings they shall erect, upon the plea that it is probable that the city will at some future time, take a part of the property under the eminent domain law, and, if buildings are erected, will have more to pay than if they are not. The final argument for the city is:

"It has a special interest in the premises as public property to prevent the defendants from misappropriating the wharf, and put it to the expense of condemning structures that the defendants have no right to erect upon the wharf." No authority is cited for this position, nor is it probable that any will ever be found.

The decree dismissing the bill is right.

*Decree affirmed.*

Judge GARNETT takes no part in this decision, having tried the case in the Superior Court.